IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HASSAN ASKARI, *Plaintiff,* | § | SA-26-CV-01960-FB |
| vs. | § | |
| TODD BLANCHE, UNITED STATES ATTORNEY GENERAL; MARKWAYNE MULLIN, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND LETICIA DIAZ, IN HER OFFICIAL CAPACITY; *Defendants.* | § | |

**ORDER AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Order and Report and Recommendation concerns the Petition for Writ of Habeas Corpus ("the Petition") filed by Petitioner Hassan Askari [#1]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#15]. The undersigned has authority to enter this order and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). For the reasons set forth below, it is recommended that the Petition be **GRANTED**, and that Respondents be ordered to **RELEASE** Petitioner from their custody under conditions compliant with statutory requirements contained in 8 U.S.C. § 1231(a)(3).

## I. Jurisdiction

This Court has jurisdiction over the Petition because Petitioner challenges the constitutionality of his continued detention and not the final order of removal underlying his detention. The Real ID Act divests federal courts of jurisdiction to consider challenges to removal orders, and federal courts lack jurisdiction to review discretionary decisions of the Attorney General. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(5)). Federal courts have jurisdiction, however, to adjudicate claims challenging the constitutionality of an alien's continued detention. *See Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 776 (W.D. Tex. 2006) (citing *Gul v. Rozos*, 163 F. App'x 317, 319 (5th Cir. 2006)).

## II. Background

Petitioner filed his *pro se* Petition for Writ of Habeas Corpus on March 20, 2026, asking this Court to order his immediate release while he awaits his removal. Respondents Todd Blanche, Markwayne Mullin, Todd Lyons, and Leticia Diaz ("Federal Respondents") have filed a response in opposition to Petitioner's habeas corpus petition. Petitioner filed a *pro se* reply and, after obtaining counsel, a second reply in support of his petition. The undersigned held an evidentiary hearing on July 27, 2026. The matter is ripe for the Court's review.

The relevant, undisputed facts in this case are established by the record and the representations of counsel at the evidentiary hearing. Petitioner Hassan Askari is a native and citizen of Afghanistan who was encountered by a U.S. Customs and Border Protection Border Patrol Agent near Eagle Pass, Texas on November 17, 2024. (Arredondo Decl. [#7-1], ¶¶ 2-3.) On that date, Petitioner was apprehended and taken into Immigration and Customs Enforcement ("ICE") custody, placed in Expedited Removal proceedings pursuant to Section 235(b)(1) of the

Immigration and Nationality Act ("INA"), and charged with illegal entry pursuant to 8 U.S.C. § 1325. (*Id.* ¶¶ 3-4.) Petitioner was convicted of illegal entry on March 14, 2025, and sentenced to 117 days. (*Id.* at ¶ 5.) Petitioner completed his sentence on March 19, 2025, and was transferred to ICE custody. (*Id.* at ¶ 6.)

On April 2, 2025, Petitioner claimed fear of return to Afghanistan and was referred to USCIS for a credible fear screening. (*Id.* at ¶ 7.) USCIS conducted the interview and issued a positive credible fear finding on April 7, 2025. (*Id.* at ¶ 8.) USCIS also issued a Notice to Appear ("NTA"), placing Petitioner into removal proceedings pursuant to Section 240 of the INA. (*Id.*) Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal on July 30, 2025. (*Id.* at ¶ 9.) An immigration judge held a merits hearing on Petitioner's application for asylum and withholding of removal on August 18, 2025. (*Id.* at ¶ 10.) Petitioner was granted withholding of removal to Afghanistan but denied all other forms of relief. (*Id.*) Both parties waived appeal of the Immigration Judge's order before the BIA. (*Id.*)

ICE Enforcement and Removal Operations conducted a 90-day[1] Post Order Custody Review ("POCR") and recommended continued detention on February 19, 2026. (*Id.* at ¶ 19.) ICE later performed its "180-day" POCR on May 21, 2026, and recommended continued detention. (Salazar Decl. [#22-1], at ¶ 19.) ICE submitted a 270-day POCR to Headquarters Removals and International Operations Division ("HQ-RIO") for consideration on May 31, 2026. (*Id.* at ¶ 20.) HQ-RIO agreed to continue detention on June 6, 2026. (*Id.* at ¶ 21.)

During the ten months since the Immigration Judge entered a final order of removal against Petitioner and granted withholding of removal to Afghanistan, ICE has made no progress in identifying a third country to which Petitioner may be removed. On September 17, 2025,

---

[1] Although Federal Respondents refer to this custody review as the "90-day" POCR, it occurred 185 days after Petitioner's order of removal became final upon waiver of appeal by both parties.

Petitioner informed ICE that he previously lived in Brazil and Iran before entering the United States. (Arredondo Decl. [#7-1], at ¶ 12.) He also informed ICE that he has a family member in Canada. (*Id.*) On January 5, 2026, ICE contacted the U.S. Department of State regarding third-country removals for Afghan nationals. (*Id.* at ¶ 17.) The Department of State responded that ICE should await "further guidance" while it determined which countries might accept third-country nationals. (*Id.* at ¶ 18.) On February 19, 2026, ICE requested guidance from HQ-RIO regarding Afghan nationals who were granted withholding of removal to Afghanistan. (*Id.* at ¶ 18.)

On March 3, 2026, HQ-RIO recommended screening Petitioner for visa-free countries for third-country removal, as Petitioner has a valid Afghan passport. (*Id.* at ¶ 22.) On March 20, 2026, Petitioner assisted ICE in completing Form I-217, Information for Travel Document or Passport. (*Id.* at ¶ 23.) On May 12, 2026, ICE completed a Transfer Checklist and sent it to HQ-RIO for review. (Salazar Decl. [#22-1], at ¶ 15.) ICE submitted a resettlement request to Brazil on May 13, 2026, but this request was denied. (*Id.* at ¶ 16.) On May 17, 2026, ICE received confirmation from HQ-RIO that they are continuing to work on effectuating Petitioner's removal. (*Id.* at ¶ 17.) As of July 23, 2026, ICE has been notified that HQ-RIO is "actively coordinating" with the Department of State and Homeland Security "on avenues to remove aliens to a third country." (*Id.* at ¶ 22.)

As of the time of the writing of this Report and Recommendation, Petitioner remains in ICE custody. During the hearing before the undersigned, counsel for Federal Respondents confirmed that Petitioner's case is pending with HQ-RIO but conceded that no evidence of record indicates that Canada or any other third country has accepted Petitioner for removal.

Federal Respondents further conceded that no third countries have been identified for removal since Brazil rejected the resettlement request submitted by ICE.

## III. Analysis

Petitioner argues that his prolonged detention following the entry of a final order of removal against him violates his Fifth Amendment due process rights and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[2] In turn, Federal Respondents contend that Petitioner is subject to a final order of removal that mandates his detention and that Petitioner has failed to meet his burden under *Zadvydas* to show there is no significant likelihood of his removal in the reasonably foreseeable future. The District Court should find that Petitioner is entitled to relief on his substantive due process claim under *Zadvydas*.

In *Zadvydas*, the Supreme Court limited detention beyond the initial 90-day removal period to a period "reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 689. The Court held that detention for six months is "presumptively reasonable," but beyond six months, if removal is no longer reasonably foreseeable, continued detention is not warranted. *Id.* at 701. Under *Zadvydas* and the regulations implementing it, if a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; 8 C.F.R. § 241.13(a). If a noncitizen is not likely to be removed in the reasonably foreseeable future, the noncitizen must be released unless continued detention is justified by one of the "special circumstances" set forth in 8 C.F.R. § 241.14. *Id.* § 241.13(e)(6).

---

[2] Petitioner also asserts claims for relief on procedural due process grounds. Because the undersigned recommends that the District Court grant Petitioner's claim for release pursuant to the due process rights afforded Petitioner by the Supreme Court's decision in *Zadvydas*, this Report and Recommendation does not reach Petitioner's other claims.

The burden of demonstrating there is no significant likelihood of removal rests with the noncitizen. 533 U.S. at 701. Petitioner contends there is no significant likelihood of removal because he has already been detained for ten months and because he cannot be removed to his home country of Afghanistan. Petitioner further argues that very few people subject to withholding of removal are removed from the United States. In turn, Federal Respondents argue that "[t]he 'reasonably foreseeable future' is not a static concept; it is fluid and country-specific, depending in large part on country conditions and diplomatic relations." (Resp. [#7], at 5 (citing *Ali v. Johnson*, 2021 WL 4897659, at *3 (N.D. Tex. Sept. 24, 2021).) They further argue that conclusory allegations are insufficient to meet Petitioner's burden of proof. (*Id.* (citing Nagib v. Gonzales, No. 3:06-CV-0294-G, 2006 WL 1499682, at *3 (N.D. Tex. May 31, 2006).) For the following reasons, the undersigned concludes that Petitioner has met his burden to provide good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

Withholding of removal is a form of relief that prohibits the Government from removing a noncitizen to a country where he has shown a sufficient likelihood of persecution, but does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, "[v]ery few" people who are granted withholding of removal are removed from the United States. *Puertas-Mendoza v. Bondi*, SA-25-CA-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"). The grant of withholding of removal thus "substantially increases" the

difficulty of removing Petitioner. *Shengelia v. Ortega*, No. 5:25-CV-1545-JKP, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025)).

Courts in this District have repeatedly found that petitioners met their burden under *Zadvydas* by offering proof of a grant of withholding of removal and a lack of assurances from the Government that a third country will accept them. *See, e.g., Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705-6 (W.D. Tex. 2025); *Shengelia v. Ortega*, No. 5:25-CV-1545-JKP, 2025 WL 3654368, at *4 (W.D. Tex. Dec. 16, 2025); *Medellin Martinez v. Bondi,* No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025). Here, it is undisputed that Petitioner was granted withholding of removal to Afghanistan and that his order of removal became final over ten months ago after both parties waived appeal of the Immigration Judge's order. It is also undisputed that Petitioner has been in ICE detention since March 2025. It is finally undisputed that as of today, Federal Respondents have received no assurances from any third country that Petitioner may be removed somewhere other than his home country. Petitioner has thus provided a "good reason to believe" that there is no significant likelihood of removal in the reasonably foreseeable future.

Upon concluding that Petitioner has met his initial burden under *Zadvydas*, the undersigned turns to Federal Respondents' evidence and finds it insufficient to rebut Petitioner's showing. Federal Respondents emphasize that HQ-RIO is "actively coordinating" with the Department of State and Homeland Security to effectuate Petitioner's removal. (Salazar Decl. [#22-1] at ¶ 22.) During the hearing, however, Federal Respondents conceded that no third country has been identified for Petitioner's removal since Brazil denied the resettlement request submitted on Petitioner's behalf. In their briefing and during the hearing, Federal Respondents

failed to identify any cases where ICE successfully removed Afghan nationals to a third country after being granted withholding of removal to Afghanistan. Furthermore, Federal Respondents have not presented evidence of any outstanding removal requests submitted to other countries on Petitioner's behalf.

Even if ICE did have outstanding requests with third countries, that fact alone would be "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Mont.*, 807 F. Supp. 3d 697, 707 (W.D. Tex. 2025); *Medellin Martinez v. Bondi, et al.*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025). What's more, efforts to remove Petitioner to a third country "would likely be delayed by proceedings contesting his removal to the third country finally identified." *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *5 (W.D. Tex. Feb. 13, 2026) (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025)). These circumstances further demonstrate that Petitioner's removal is not likely in the reasonably foreseeable future. *Id.* (citing *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025)). In light of the grant of withholding of removal from his home country, Petitioner's continued detention violates due process per the Supreme Court's holding in *Zadvydas.* The District Court should accordingly order Petitioner's release.

## IV. Conclusion and Recommendation

Based on the foregoing, the undersigned **recommends** that the Petition for Writ of Habeas Corpus filed by Petitioner Hassan Askari [#1] be **GRANTED** and that Respondents be ordered to **RELEASE** Petitioner from their custody under conditions compliant with statutory requirements contained in 8 U.S.C. §1231(a)(3).

It is **FURTHER ORDERED** that the parties confer on conditions of release and submit joint proposed conditions for Petitioner's post-removal supervision that comply with the relevant statutory provisions and regulations within **seven days** to be considered by the District Court.

**V. Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. **During the evidentiary hearing held before the undersigned on July 27, 2026, the parties agreed to shorten the deadline for filing objections to expedite resolution of this case, and specifically, that they would file any objections within seven days after being served a copy of the report and recommendation**. Written objections to this report and recommendation must therefore be filed **within seven (7) days** after being served with a copy of same. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted

by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 28th day of July, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE